# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| SHARON KATHLEEN CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:17-CV-00188-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Sharon Kathleen Campbell filed a complaint in this Court seeking remand of the Social Security Commissioner's final decision to deny her application for disability benefits under Title II of the Social Security Act.

**I. PROCEDURE**

On June 18, 2013, Campbell filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") with the Social Security Administration ("SSA") pursuant to 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). In both claims, Campbell alleged disability beginning December 31, 2012, but SSA denied both claims on September 20, 2013 and again upon reconsideration on February 10, 2014. On July 24, 2015, Campbell testified at a hearing before an administrative law judge ("ALJ"). On August 14, 2015, the ALJ issued his decision finding that Campbell was not disabled for purposes of the Social Security Act from December 31, 2012, through August 14, 2015. On December 30, 2016, the Social Security Appeals Council denied Campbell's request for review,

making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner").

On March 2, 2017, Campbell filed a complaint in this Court seeking reversal or remand of the Commissioner's decision. [DE 1]. Campbell filed her initial brief in this matter on September 1, 2017. [DE 14]. On October 13, 2017, the Commissioner filed a response requesting the Court to affirm the decision denying benefits. [DE 15]. This matter became ripe on October 27, 2017, when Plaintiff filed her reply brief. [DE 16]. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II. RELEVANT BACKGROUND

Campbell was born on May 2, 1963, and was 49 years old at the alleged disability onset date of December 31, 2012. Campbell attained a Bachelor of Science in Biology from the University of Kentucky, but she has never held a job in a field relevant to her degree. She had performed part-time work in the past, but was unemployed at the time of the ALJ's decision.

### A. Hearing Testimony

At the hearing, the ALJ questioned Campbell about her disabilities, drug prescriptions, symptoms of her disabilities, living conditions, and work experience. Campbell based her claims for DIB and SSI on mental impairments including bipolar disorder, anxiety, and post-traumatic stress disorder ("PTSD") as well as physical disabilities including diabetes, obesity, plaque psoriasis, and Parkinsonism. Her various ailments manifest themselves in many ways. Campbell detailed her difficulties with reading comprehension, focusing on a task, sleeping well, and appearing in public. She explained that she has struggled to find a job recently due to extreme anxiety and depression.

Campbell testified that she lives with her 72-year old mother who provides her with money as needed, but she also receives food stamps and medical care through the Healthy Indiana Plan ("HIP"). Campbell reported spending the majority of her time at home where she performs many basic household chores including vacuuming, mowing the lawn, dog care, dusting, and laundry. In addition, Campbell indicated she can drive alone and performed a substantial commute when she was working.

Despite having a bachelor's degree in biology, Campbell never worked in a medical or other environment relevant to her study. From 1997 through 2009, Campbell worked part-time (roughly 20 to 25 hours per week) and seasonal jobs in retail and office settings. During this time, she worked as a sales associate at the retail chain Crate and Barrel, which required her to be on her feet and interact with customers, ring up sales on a cash register, box merchandise, and complete other various tasks. At times, she also worked in the office of the Crate and Barrel, counting money and reconciling the registers from a given day.

A vocational expert ("VE") testified before the ALJ in response to a hypothetical reflecting Campbell's RFC. The VE opined that the limitations set forth in the hypothetical would prevent a claimant from performing the work Campbell had done in the past. Additionally, the VE testified that such a claimant would be able to perform a variety of jobs that required less skill and existed in sufficient number in the national and regional economy. Finally, the VE testified that the jobs a person with the hypothetical limitations in Campbell's RFC could perform would require on-task activity 90 to 95% of the time.

**B.      Relevant Medical Evidence**

The record reflects Campbell's long history of treatment for both physical and mental health conditions. In light of Campbell's arguments here on appeal, the Court need only provide

context for her mental impairments. The record makes clear, however, that Campbell has a "long history of psychiatric and inpatient treatment going back to the 1990's in Kentucky." [DE 10 at 349]. Among her acute issues was a suicidal manic episode in 2009 that led her to check herself into a hospital. Campbell's efforts to seek treatment for her mental impairments starting in 2012 as summarized below are particularly relevant to the matter before this Court.

Campbell began seeing psychiatrist David Baron, M.D. in January 2012 and continued to do so through April 2013. During this time, Dr. Baron reported that Campbell's mood was generally euthymic; her language skills remained intact; and she showed no signs of anxiety. However, Dr. Baron did diagnose Campbell with bipolar disorder and prescribed her various prescription drugs.

From April 2012 to March 2013, Campbell also saw psychologist, Dr. Todd Snyder. Dr. Snyder reported that Campbell exhibited a positive affect and denied suicidal ideation or impulses. However, he confirmed Campbell's diagnoses of bipolar disorder, PTSD, and generalized anxiety disorder.

Around April 2013, Campbell began seeing a new therapist, Abbey Hurley, Psy.D. In a treatment summary around August 2013, Hurley indicated that Campbell desired to work, but would be limited in doing so because she struggles to assert herself, engage in multiple tasks, and adequately manage her anxiety.

Consultative psychologist John T. Heroldt, Ed.D., HSPP, conducted a clinical interview and mental status examination on Campbell for the Social Security disability determination bureau on September 17, 2013. In his resulting report, Heroldt diagnosed Campbell with bipolar disorder, depression, PTDS, and anxiety disorder and reported a GAF score of 55, which is generally indicative of moderate symptoms due to their mental impairments.

On October 16, 2014, Campbell visited psychiatrist Narendra Singh, M.D. on a referral from her family doctor because her original psychiatrist, Dr. Baron, had relocated. Dr. Singh found that Campbell had no major cognitive deficits but was often distracted because of anxiety. He confirmed Campbell's diagnoses of "bipolar disorder, most recent episode depressed" and PTSD and assigned a GAF score of 40 based on his observations that day. Nothing in the record suggests that Campbell ever saw Dr. Singh again.

In July 2015, Campbell visited a neurologist, Adkadiy Konyuhov, M.D., because she had been experiencing tremors and difficulty speaking. Dr. Kohnyuhov diagnosed Campbell with Parkinsonism, but could not determine whether Parkinsonism had caused her tremors and speech issues or whether they were a result of long-term use of anti-psychotic drugs.

Campbell began seeing psychiatrist Michael Frampton, M.D. in January 2015. Dr. Frampton confirmed her diagnoses of bipolar disorder, depression, and PTSD. In May 2015[1], Dr. Frampton completed a Medical Assessment of Ability to Do Work-Related Activities ("Medical Source Statement")[2] in which he offered assessments of Campbell's work-related abilities before concluding that she could not sustain competitive work on a regular and continuing basis.

Campbell was also treated by licensed psychologist, Kevin Mooney, Ph.D., starting in May 2014. Dr. Mooney determined that Campbell had bipolar disorder and prescribed therapy and cognitive behavioral treatment. In June 2015, Dr. Mooney completed the same Medical

---

[1] The ALJ indicates that Dr. Frampton completed the Medical Source Statement in June 2015. However, careful review of the original form in the record shows that it was signed in May 2015. [DE 10 at 665].

[2] The Commissioner contends that the Medical Source Statement attributed to Dr. Frampton does not clearly confirm that Dr. Frampton, rather than Michele Loughren, PMHCNS-BC NP, was its author. [DE 15 at 5]. However, the Commissioner discussed the opinion reflected in the Medical Source Statement in her brief on this matter as if it were completed by Dr. Frampton because the ALJ considered it to be Dr. Frampton's opinion in reaching his decision about Campbell's disability. [*Id.*]. Consistent with both the ALJ's and the Commissioner's approach, the Court will proceed here as if the May 2015 Medical Source Statement is Dr. Frampton's medical opinion about Campbell's ability to perform work-related activities.

Source Statement form that Dr. Frampton completed and concluded similarly that Campbell was not capable of sustain competitive work on a regular and continuing basis.

The treatment notes and Medical Source Statements of Drs. Frampton and Mooney are the focal points of this appeal.

### C. ALJ Decision

The ALJ undertook a five-step analysis to determine whether Campbell is disabled under 42 U.S.C. §§ 416(i), 423(d), and 1382c. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4)[3]. If at any step, the ALJ had determined that Campbell was disabled, the inquiry would have ended without the need to continue to the next step in the analysis. *See* 20 C.F.R. § 404.1520(a)(4). Here, the ALJ reached Step 4 where he determined Campbell's Residual Functional Capacity ("RFC"), or "the most [she could] still do despite [her] limitations," before concluding that she could not perform past relevant work. *See id.*; 20 C.F.R. § 404.1545. At Step 5, the ALJ found that Campbell could perform other work with certain limitations, thus concluding that she was not disabled under the Social Security Act.

## III. LEGAL ANALYSIS

### A. Standard of Review

On judicial review, under the Social Security Act, the reviewing court must accept the Commissioner's factual findings as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). A court reviewing the findings of an ALJ may reverse only if the findings are not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

---

[3] The regulations related to DIB are outlined in 20 C.F.R. Part 404 and the regulations related to SSI are outlined in 20 C.F.R. Part 416. The regulations are identical as relevant in this action. Therefore, the Court will only reference the DIB regulations in Part 404 throughout this Opinion and Order.

Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

The district court must review the entire administrative record but must not reconsider facts, re-weigh evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The court must ensure that the ALJ built a logical bridge from the evidence to his conclusion, and in its review, the court must not substitute its own opinion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Thus, the question for a reviewing court is not whether the claimant is disabled, but whether the ALJ "use[d] the correct legal standard and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

### B. Issues for Review

The legal issue before this court is whether the ALJ afforded proper weight to the opinions of Drs. Frampton and Mooney, as Campbell's treating physicians; Dr. Singh, who only examined Campbell once; and Heroldt, the Agency's consultative psychologist, who only examined Campbell once for the sole purpose of providing an opinion related to her disability application. Specifically, Campbell argues that the ALJ did not support with substantial evidence his decisions to afford "little weight" to the opinions of Drs. Frampton and Mooney and "some weight" to Dr. Singh's and Heroldt's opinions.

#### 1. Drs. Frampton and Mooney

"A treating physician's opinion is entitled to 'controlling weight' if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

7

other substantial evidence.'" *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1527(d)(2)). "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). In evaluating medical opinion evidence, SSR 96-2p makes clear that supportability and consistency are factors to consider in assigning weight to a physician's opinion. SSR 96-2p, 1996 WL 374188 (July 2, 1996). Nevertheless, "[i]t is not the reviewing Court's job to determine whether the treating physician's opinion should have been given controlling weight . . . [but] [t]he ALJ must give 'good reasons' for the weight afforded to a treating source's opinion." *Hinkle v. Berryhill*, No. 1:17-CV-97-TLS, 2018 WL 798187, at *4 (N.D. In. Feb. 9, 2018) (citing 20 C.F.R. § 404.1527(c)(2)). Therefore, "an ALJ may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Schreiber v. Colvin*, 519 F. App'x 951, 958 (7th Cir. 2013) (internal quotation omitted).

However, an "[a]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 301 (7th Cir. 2010). Moreover, in deciding to afford less than controlling weight to the opinion of a treating physician, an ALJ must consider the "relevant regulatory factors under 20 C.F.R. § 404.1527(c) [including] the treatment relationship's length, nature, and extent; the opinion's consistency with other evidence; the explanatory support for the opinion; and any specialty of the treating physician." *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018).

For the reasons discussed below, this Court finds that the ALJ here (1) did not adequately explain his reasons for refusing to give controlling weight to the opinions of Dr. Frampton and Mooney, Campbell's treating sources; (2) cherry-picked evidence from their opinions; and (3) did not sufficiently address the relevant regulatory factors in support of discounting their treating source opinions.

In his written decision, the ALJ granted "little weight" to Dr. Frampton's opinions regarding Campbell's ability to perform work stating that the "the limitations stated in them are not supported by Dr. Frampton's treatment notes of the claimant" and citing an exhibit in the record that included treatment notes from January 13, 2015, through May 15, 2015. Similarly, the ALJ granted "little weight" to Dr. Mooney's opinion stating that "the limitations espoused in them are not supported by Dr. Mooney's treatment notes" and citing the exhibit that included his treatment notes from May 13, 2014, through May 7, 2015. The ALJ acknowledged the shared opinion of both doctors, as presented in their respective Medical Source Statements, that Campbell could not sustain competitive work on a regular and continuing basis. In the paragraphs in which the ALJ reported the weight he gave to their opinions, he explicitly and thoroughly noted—without commentary—each doctor's assessments of Campbell's work-related skills as reported in their Medical Source Statements.

In a previous paragraph, the ALJ also recited many facts taken directly from Dr. Frampton's treatment notes, including Campbell's reports of her own symptoms, their observations of her symptoms during their examinations, their diagnoses of her condition, their prescribed treatments, and her compliance with those recommended treatments. Indeed, the ALJ regurgitated a large range of facts pulled directly from Dr. Frampton's treatment notes and Medical Source Statement. However, the ALJ only identified three comparable facts from Dr.

9

Mooney's treatment notes. The ALJ only reported that Dr. Mooney diagnosed Campbell with bipolar disorder, developed a treatment plan for her to continue with 'ACT acceptance and commitment therapy' and cognitive behavioral treatment, and understood her to desire further education and training.

It is not the province of any reviewing court to determine the amount of weight that should be afforded to treating source opinions. *Wright v. Commissioner*, No. 1:16-CV-382-TLS, 2018 WL 898117, at *2 (N.D. In. Feb. 15, 2018). Rather, the reviewing court must evaluate the reasons the ALJ gave for refusing to give the treating source opinions "controlling weight." "[a]n ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). It is not necessary that the ALJ include all relevant "information within a single paragraph . . . [because a decision] should be read as a whole with common sense," but a logical bridge between the evidence and the ALJ's conclusion must still follow. *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010). Here, the ALJ failed to articulate such a logical bridge.

First, the Court recognizes that the ALJ clearly and thoroughly represented both doctors' assessments of Campbell's work-related abilities as reflected in their Medical Source Statements. Second, the ALJ cited a range of facts from both Dr. Frampton's and Dr. Mooney's treatment notes even if he cited fewer facts from Dr. Mooney's treatment notes. However, the quantum of evidence is not the measure of whether the ALJ properly discounted the doctors' opinions. The ALJ's running litany of facts, as lengthy as it was, cannot on its own explain why the ALJ found that the doctors' opinions were inconsistent with their respective treatment notes. The ALJ

needed to link those facts to other facts and evidence in the record[4] explicitly to support his bare conclusions that they were inconsistent. For this reason alone, remand is necessary. The ALJ's decision to discount the opinions of Dr. Frampton and Dr. Mooney also suffers from other flaws.

As noted above, the ALJ reported a variety of facts from Campbell's treatment history with both Dr. Frampton and Dr. Mooney, including reference to specific treatment notes by the doctors, their diagnoses, and the medications they prescribed. However, the ALJ did not mention facts from those treatment records that could have supported a finding that Campbell was indeed disabled. For instance, the ALJ does not account for Dr. Frampton's notes indicating that Campbell had elevated anxiety; rapid speech; was very tremulous; was depressed, sad, and tearful; and suffered from headaches. [*See* DE 10 at 632, 636, 644, 648]. Similarly, the ALJ appears to ignore Dr. Mooney's notes that Campbell suffered from frustration with not being able to remember things [*Id.* at 594]; overreactions and cognitive distortions [*Id.*]; being overwhelmed and reacting extremely to normal stresses [*Id.* at 596]; anxiety attacks that she fears are actually a heart attack or stroke [*Id.* at 598]; a major bipolar episode [*Id.* at 604]; and disabling eczema and paralyzing panic attacks [*Id.* at 617].

"An ALJ has the obligation to consider all relevant evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419 (7th Cir. 2010). By leaving out such large portions of the physicians' treatment notes in conducting his analysis, the ALJ could not properly determine whether the opinions of Drs. Frampton and Mooney were consistent with their

---

[4] The ALJ's own opinion reveals evidence that could have corroborated Dr. Frampton's and Dr. Mooney's shared opinion that Campbell could not work without significant accommodations due to her limitations. For instance, the ALJ cites treating psychologist Hurley's opinion that Campbell has significant anxiety and cannot maintain a job despite wanting to do so as well as consulting psychologist Herolt's diagnoses of bipolar disorder, depression, PTSD, and anxiety disorder. However, the ALJ does not account for this evidence or in any way connect this evidence to his decision to discount the opinions of Drs. Frampton and Mooney. Such evidence may be worth of consideration on remand.

11

treatment notes as a whole. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). This is a particularly harmful error in a case like Campbell's because people who suffer from mental illness have good days and bad days such that their symptoms at any single moment say little about their overall condition. *See id.*

Lastly, the ALJ's assessment of the opinions of Drs. Frampton and Mooney does not clearly demonstrate that he considered the necessary regulatory factors in deciding to discount their opinions. When an ALJ fails to give controlling weight to the opinion of a claimant's treating physician, he must analyze several factors to determine the proper weight to give the opinion. These factors include:

> the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case.

*Devine v. Berryhill*, No. 2:17-CV-14-JEM, 2018 WL 1054158, at *4 (N.D. In. Feb. 26, 2018) (discussing the regulatory factors mentioned in 20 C.F.R. § 404.1527(c)(2)). Indeed, if an ALJ affords "little weight" to the opinion of a treating physician, he must "explicitly address the checklist of factors as applied to medical opinion evidence." *Campbell*, 627 F.3d at 308.

Here, the ALJ decided to afford little weight to the opinions based solely on their purported inconsistency with the doctors' corresponding treatment notes without developing any analysis of the substantive regulatory factors above. Again, the ALJ's simple recitation of facts cannot provide any commentary as to whether the physicians' opinions were sufficiently supported or whether they were consistent with other evidence

12

in the record—some of which was discussed above. Additionally, the ALJ does not explain the extent to which Drs. Frampton and Mooney were familiar with Campbell's disability application. As a result, the ALJ has not met his burden to explicitly address the regulatory factors in support of his decision to discount the opinions of Drs. Frampton and Mooney.

Thus, taking the foregoing into consideration, the ALJ failed to give good reasons for his decision to discount the opinions of Drs. Frampton and Mooney; failed to consider all the relevant evidence in deciding to discount their opinions; and failed to adequately explain his reasoning for those decisions under the regulatory framework of 20 C.F.R. § 404.1527(c). Accordingly, the ALJ's decision to discount Dr. Frampton's and Dr. Mooney's opinions is not supported by substantial evidence and must be remanded.

### 2. Heroldt and Dr. Singh

Campbell also argues that the ALJ erred by not indicating why he gave "some weight" to the opinions of consultative psychologist Heroldt and psychiatrist Dr. Singh. Heroldt based his opinion on a one-time clinical interview with Campbell ordered as part of her disability application process. Dr. Singh, in a one-time evaluation, prescribed Campbell medicine, concluded that she was not a candidate for inpatient psychiatric care, and should rather continue to receive outpatient care. In assessing the weight to give to these medical opinions, the ALJ was still required to consider explicitly the regulatory factors discussed above and give reasons for the weight given to Heroldt's and Dr. Singh's opinions. *See Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014); *Campbell v. Astrue*, 627 F.3d 299 (7th Cir. 2010). The ALJ failed to do so.

For instance, the ALJ addressed Heroldt's and Dr. Singh's treating relationship with Campbell by explaining that their opinions were based on one-time interviews as opposed to

13

longitudinal treatment histories. However, the ALJ offered no further comparison to the evidence in the record to persuade the Court that his decision to give their opinions "some weight" is supported by substantial evidence. Therefore, remand is necessary for reconsideration of the weight given to Dr. Singh's and Heroldt's opinions as well as the opinions of Drs. Frampton and Mooney.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the weight given to the medical opinions of Heroldt and Drs. Frampton, Mooney, and Singh in the ALJ's decision is not supported by substantial evidence. Therefore, Campbell's request for remand is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order.

**SO ORDERED.**

Dated this 9th day of April 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
